IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3184-FL

| | | |
|---|---|---|
| NAZEER DIJON VICK,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF JAMES MCVICKER, NATASHA SKIPWORTH, MICHAEL RATCLIFFE, RONETTA BUTTS, DANIEL SNIDER, and SERGEANT JUSTIN HEWETT,<br><br>Defendants.[1] | ) | ORDER |

This matter is before the court on defendants' respective motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 62, 75) and to seal (DE 67). The issues raised are ripe for adjudication.

**STATEMENT OF THE CASE**

Nazeer Dijon Vick ("plaintiff"), a former federal pretrial detainee proceeding pro se, commenced this action by filing complaint asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges individual capacity claims for excessive force, failure to protect, and deliberate indifference to his medical needs in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff named the following defendants: Justin Hewett ("Hewett"), Captain with the Fair Bluff Police Department in Fair Bluff, North Carolina;

[1] The court constructively amends the case caption to reflect dismissal of plaintiff's claims against formerly named defendants the Town of Elizabethtown, the Bladen County Sheriff's Office, John Doe Deputy Sheriff, Tami DeVane, and Paul Butler on March 3, 2024.

Michael Ratcliffe ("Ratcliffe"), Sergeant with the Narcotics Unit for the Bladen County Sheriff's Office ("BCSO"); Natasha Skipworth ("Skipworth"), a Captain at the Bladen County Detention Center ("BCDC"); Daniel Snider ("Snider"), a police officer with the Jefferson Police Department in Jeffersonville, Indiana; and Ronetta Butts ("Butts"), a licensed practical nurse employed by Southern Health Partners.[2]

Following a period of discovery, and in accordance with the case management order, defendant Butts filed the instant motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) and to seal. Defendant Butts argues plaintiff cannot show a triable issue of fact on his claim asserting defendant Butts acted with deliberate indifference to plaintiff's serious medical needs in violation of the Fourteenth Amendment and that defendant Butts is entitled to qualified immunity. In support, defendant Butts submits a memorandum of law, statement of material facts, and appendix of exhibits including her personal affidavit and excerpts from plaintiff's medical records.

The remaining defendants also filed the instant second motion for summary judgment pursuant to Rule 56(a), arguing plaintiff cannot show a triable issue of fact on his claims for excessive force and for bystander liability, and that these defendant are entitled to qualified immunity. In support, defendants McVicker, Skipworth, Ratcliffe, Snider, and Hewett submit a memorandum of law, statement of material facts, and appendix of exhibits including: 1) declarations from defendants Hewett, Skipworth, Ratcliffe, and Snider; 2) an affidavit from defendant Butts and attached medical records.

[2] Bladen County contracted with Southern Health Partners to provide health care to detainees and inmates at the Bladen County Detention Center. (Def's SOMF (DE 64) ¶ 1).

Plaintiff responded by filing a pleading captioned "Motion to Dismiss Defendants' Summary Judgment." Defendant Butts responded to plaintiff's motion. The court denied plaintiff's motion, but granted him an extension of time, until June 30, 2026, to respond to defendants' pending motions for summary judgment. Plaintiff did not respond.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows.[3] Prior to the April 28, 2023 incident, the BCSO was investigating potential smuggling of narcotics or contraband into the BCDC. (Defs' SOMF (DE 76) ¶ 7). On April 28, 2023, a coordinated search was conducted of the C-block cells at the BCDC. (Id.) Law enforcement suspected certain BCDC officers were involved with the smuggling. (Id.) Accordingly, investigators and officers from the BCSO, who were not BCDC officers, were brought into the facility to handle the search. (Id.) At approximately 10:30 p.m., the officers assigned to conduct the search at the BCDC, as well as defendant Skipworth, met for a briefing prior to initiating the search. (Id. ¶ 8). Defendant Skipworth was advised to "pop" open each cell door for the search teams to enter the respective cells to be searched. (Id. ¶ 9).

Defendants Hewett and Ratcliffe were assigned to search plaintiff's cell. (Id. ¶ 9). Plaintiff "violently" resisted the officers' efforts to enter his cell by holding his cell's trap door to prevent entry. (Id.) Once defendants Hewett and Ratcliffe were able to enter plaintiff's cell, they observed that plaintiff's pants were partially down and perceived that plaintiff was trying to stuff something into his rectum. (Id. ¶ 10). Plaintiff became physically combative and refused to

[3] Where plaintiff failed to respond to defendants' motions, the only competent summary judgment evidence in the record comes from defendants. See Fed. R. Civ. P. 56(c).

"give officers his hands" and refused the officers' verbal commands to stop resisting (Id.); see also, ((DE 77-1) ¶ 9). Defendants Hewett and Ratcliffe ultimately brought plaintiff to the ground and placed him in handcuffs. (Defs' SOMF (DE 76) ¶ 11). Due to his active resistance, the officers decided to remove him from his cell to conduct a more adequate search. (Id.) However, plaintiff's cell door had become locked during the "scuffle." (Id.)

Once the cell tower opened plaintiff's cell door, other deputies, including defendant Snider, entered plaintiff's cell. (Id. ¶ 12). Defendant Snider and the other deputies placed plaintiff on a mattress on the floor of his cell to ensure plaintiff's safety. (Id.) The officers then attempted to remove plaintiff's pants so that they could ensure nothing was concealed inside of them. (Id.) Once the officers released plaintiff's leg from one of his pant legs, plaintiff began to kick the officers and the officers were only able to do a visual body inspection. (Id. ¶ 13). The officers next decided to "scan" plaintiff because they were only able to do a visual inspection of his buttocks area. (Id.) The officers next put plaintiff's pants back on and escorted him to the booking area for the scan. (Id. ¶ 14).

Defendant Snider gave plaintiff verbal commands to enter the scanner and attempted to escort plaintiff into the scanner. (Id. ¶ 16). Plaintiff remained in handcuffs. (Id.) Plaintiff intentionally "cinched" defendant Snider's arm on the hand Snider was using to hold plaintiff for safety purposes. (Id.) Defendant Snider next moved forward to release his hand, and in doing so, plaintiff threw himself into the scanner and onto the ground, began flailing around, and claimed to have had a seizure. (Id.) Officers assisted plaintiff out of the scanner and defendant Hewett requested a restraint chair for plaintiff. (Id.) Hewett also requested that emergency medical

services ("EMS") come to the BCDC to "check on" plaintiff. (Id.) Defendant Butts was not present at the BCDC when the incident at issue occurred. (Def.'s SOMF (DE 64) ¶ 13).

While waiting for EMS to arrive, plaintiff asked that his handcuffs be adjusted and officers moved plaintiff's handcuffs from the back to the front. (Def.s' SOMF ¶ 17). Shortly thereafter plaintiff reached down and pulled Officer Cook's legs out from under him, causing Cook to land on his back on the ground. (Id.) EMS then transported plaintiff to the local hospital's emergency room ("ER"). (Id. ¶ 18). Plaintiff reported to the ER's physician that he had injured his right ankle and right shoulder. (Def.'s SOMF (DE 64) ¶ 15). Plaintiff also reported that he had hit his head, but did not lose consciousness. (Id.) Plaintiff attested to the ER's physician that he did not place drugs his anal cavity, but refused to permit the physician to inspect his anal cavity for drugs. (Id.) The ER physician examined plaintiff and observed an abrasion to plaintiff's right wrist, right ankle tenderness, and right shoulder tenderness. (Id.) The results from x-ray testing revealed no fractures. (Id. ¶ 15). The ER physician discharged plaintiff at approximately 1:25 am., with a prescription for Tylenol. (Id.) Due to the struggle with the officers at the BCDC, plaintiff had torn skin around his wrists from the handcuffs. (Def.s' SOMF (DE 76) ¶ 18). Officers, however, ensured there was a two-finger gap between plaintiff's wrists and the handcuffs. (Id.)

Back at the BCDC, defendants Hewett and Ratcliffe returned to plaintiff's cell block and collected items of contraband from each cell which was searched. (Id. ¶ 19). Contraband items from plaintiff's cell included matches, marijuana, multiple balloons, fingertip gloves, cigarettes, a metal shank, and razor blades. (Id.) Plaintiff subsequently was charged with the following: four counts of resisting/delaying/obstructing an officer; two counts of possession with the intent

to manufacture/sell/distribute; possession of a weapon by a prisoner; and possession of tobacco by an inmate. (Id. ¶ 20).

On April 29, 2023, defendant Butts obtained the medical records from plaintiff's ER visit and entered a medication order, from P.A. Russell ("Russell"), for plaintiff to receive Tylenol for seven days. (Id. ¶ 17). Plaintiff received his medication, but refused his prescribed Tylenol on April 29, 2023 and April 30, 2023. (Id. ¶ 18). On May 3, 2023, plaintiff made a sick call request complaining his "butthole" felt split, felt like it was bleeding, and stung when he showered. (Id. ¶ 19). Russell examined plaintiff that same day. (Id. ¶ 20). Plaintiff reported to Russell that his "butthole" stung, burned, and that he was bleeding from "being raped and violated" on April 28, 2023. (Id. ¶ 20). Plaintiff refused a rectal examination. (Id.)

After conducting a visual examination, Russell observed a fissure at the top of plaintiff's buttock crease, with his rectum/anus intact, and without the presence of blood or external abnormalities. (Id.) Russell entered an order for plaintiff to receive a triple-antibiotic ointment to apply to the area of the fissure twice daily for seven days. (Id.) Plaintiff did not make any further sick call requests complaining of pain in or around his anus. (Id. ¶ 21). In her role as a nurse, defendant Butts could not independently make medical decisions for inmates. (Id. ¶ 7). Rather, all medical decisions were made or authorized by Russell or other outside medical care providers. (Id.)

## DISCUSSION

A. Motions for Summary Judgement

1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586– 87 (1986).[4]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant' s] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in

---

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

[affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

Defendants raise the affirmative defense of qualified immunity. The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233. The court first determines whether plaintiff can establish a constitutional violation.

a. Use of Force

Because plaintiff was a federal pretrial detainee in state custody at the time of the use of force incident, his excessive force claim is governed by the Fourteenth Amendment and the "objective" standard set forth in Kingsley v. Hendrickson, 576 U.S. 389 (2015); see also, Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The court reviews the use of force from the perspective of a reasonable officer at the scene, "not with the 20/20 vision of hindsight," and must account for the officer's legitimate need to manage a correctional facility, including by preserving internal order and discipline and maintaining institutional security. Kingsley, 576 U.S. at 397. Several factors guide the court's evaluation, including: 1) the relationship between the need for a particular use of force and the amount of force used; 2) the extent of the detainee's injury; 3) the officers' efforts, if any, to temper or limit the amount of force; 4) the severity of the security problem presented by the detainee; 5) the threat reasonably perceived by the officer; and 6) whether the detainee was actively resisting the officer. Id.

Defendants Skipworth, Ratcliffe, Snider, and Hewett have satisfied their burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323; (see Def' s Mot. (DE 75); Def' s Mem. (DE 78); Defs' Stmt. (DE 76)); see also, ((DE 77-1) ¶¶ 28-29); (DE 77-3) ¶¶ 32-33). These defendants' submissions demonstrate that the use of force was not excessive under the Fourteenth Amendment standard and that they are entitled to qualified immunity. The burden therefore shifts to plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87. Plaintiff has not met this burden where he failed to respond to the instant motion and his complaint is not verified. See Celotex, 477 U.S. at 324; Williams v. Griffin, 952 F.2d 820,

823 (4th Cir. 1991) (holding only verified complaint can defeat an otherwise properly supported motion for summary judgment). Accordingly, plaintiff has not established a triable issue of fact, and defendants Skipworth, Ratcliffe, Snider, and Hewett are entitled to judgment as a matter of law. See Anderson, 477 U.S. at 247–48.

Plaintiff also seeks to hold defendants McVicker and Skipworth liable based upon their alleged failure to protect plaintiff from the alleged use of force. "Bystander liability is premised on an officer's "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." Johnson v. Robinette, 105 F.4th 99, 123 (4th Cir. 2024). "An officer may be liable under a § 1983 theory of bystander liability if he: 1) knows that a fellow officer is violating an individual's constitutional rights; 2) has a reasonable opportunity to prevent the harm; and 3) chooses not to act." Simmons v. Whitaker, 106 F.4th 379, 384 (4th Cir. 2024) (citation and quotation marks omitted). However, because defendants' actions fail to rise to the level of a constitutional violation, plaintiff's claim against defendants McVicker and Skipworth based on the same purported misconduct fails on the first prong of the bystander analysis. See id.

b. Medical Indifference Claims

Plaintiff alleges defendant Butts acted with deliberate indifference to his serious medical needs because plaintiff "wrote multiple sick calls and told [defendant Butts] numerous times I was in pain from my rectum and head and she stated she had nothing to do with it[,]" and defendant Butts made plaintiff wait six days to see a doctor. See ((DE 1), p. 7). The Fourteenth Amendment's Due Process Clause governs a detainee's claim of deliberate indifference, see Kingsley, 576 U.S. at 400–01; Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023).



Case 5:23-ct-03184-FL Document 85 Filed 09/09/26 Page 10 of 13

In this context, a pretrial detainee must show that the challenged government action is not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." See Short, 87 F.4th at 611. For claims challenging conditions of confinement, the inmate must establish:

> (1) [that a condition of confinement] posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [condition existed] and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. Mere negligence is insufficient to establish a claim under this standard. Id. at 611-12. Instead, the plaintiff must show "the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known." Id. at 11; see also Farmer v. Brennan, 511 U.S. 825, 836 (1994).

Plaintiff has not established a triable issue of fact under the foregoing standard. Here, the record reflects plaintiff was transported to the ER following the use of force incident where he was provided diagnostic testing and prescribed Tylenol. (Def.'s SOMF (DE 64) ¶ 15). Upon plaintiff's return from the ER, defendant Butts coordinated it so that plaintiff received the prescribed Tylenol. (Id. at ¶¶ 17, 18). Plaintiff did not submit any complaint of additional pain until he made a sick call request on May 3, 2023. (Id. ¶¶ 19, 21). Plaintiff, in turn, was seen by Russell, a physician assistant, that same day. (Id. ¶ 20). Plaintiff did not submit any further sick call requests related to the April 28, 2023, incident or any other medical concern. (Id. ¶ 21). Based upon the foregoing, there is no evidence in the record to show that defendant Butts failed to act in the face of an unjustifiably high risk of harm. See Short, 87 F.4th at 611; Koon v. North Carolina,

50 F.4th 398, 407 (4th Cir. 2022); see also, Celotex Corp., 477 U.S. at 323; Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Thus, defendant Butt's motion for summary judgment is granted.

To the extent plaintiff asserts defendant Skipworth "[t]ried to intimidate the Dr to make findings consistent with Bladen County Sheriff's Office" or attempted to "influence" plaintiff's medical treatment, plaintiff again has failed to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87; Celotex Corp., 477 U.S. at 323; see also, ((DE 77-2) ¶ 12). Thus, plaintiff cannot establish a Fourteenth Amendment violation as to defendant Skipworth. See Short, 87 F.4th at 611.

B. Motion to Seal

Defendant Butts moves to seal an exhibit containing plaintiff's medical records. See (DE 66, 67). Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. No less drastic alternative to sealing these documents is available because private information appears throughout the filing. Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Thus, the court grants the motion to seal.

## CONCLUSION

In summary, defendants' respective motions for summary judgment (DE 62, 75) are GRANTED. Defendant's motion to seal (DE 67) also is GRANTED, and the clerk of court is DIRECTED to maintain (DE 66) under seal.

SO ORDERED, this 9th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge